Good morning. May it please the court. Suzanne Lashley on behalf of the appellant Ms. Nellie Herrera. In the sentencing proceeding in this case, the court determined that methamphetamine manufacturing did occur in this case. The court then. I mean, it was big time. Well, pseudoephedrine. Our position would be, Your Honor, that pseudoephedrine possession was perhaps arguably substantial. And that's that's the point of of of this issue regarding the application of the guidelines. It's a court exercise. And that is that the district court went from from the listed chemical table under 2D1.11 to 2D1.1, which involves which addresses specifically methamphetamine manufacture. But that's what she was convicted of, correct? She was convicted of. Aiding and abetting. Aiding and abetting. Conspiracy. Possession of pseudoephedrine with the. I thought she was convicted of aiding and abetting. That's right, sir. The distribution of methamphetamine or the manufacture of methamphetamine. Isn't that what she was convicted of? Conspiracy to possess pseudoephedrine, knowing it would be used to make methamphetamine, aiding and abetting. What was the charge? Precisely. The charge was under the methamphetamine statute, was it? It was under it was under 21 U.S.C. 841A, which is the controlled substance statute. Yes, Your Honor. It was also under 841D or C. D has become C, I should say. The actual indictment references 841C. And 841C is illicit chemical provision. And our position is that this listed chemical provision is the one that cross-references or, sorry, in appendix of the guidelines, references 2D1.11. And that the applicable guidelines should have been 2D1.11. But if she was found guilty of the count of 41A1, if she was found guilty of that conspiracy, then isn't she under that guideline? Our position is that the way the government charged this, it was not, it was a conspiracy to possess pseudoephedrine in order to then assist in the manufacture of methamphetamine. So the core offense was truly possession of pseudoephedrine with the knowledge that down the line it would be used to manufacture meth. So the applicable guideline at its core and what the impetus really for the indictment is this possession of pseudoephedrine and not the down-the-road, if you will, 841A provision involving the manufacture of meth. And, in fact, the evidence of That was charged, though, right? It was charged in conjunction with this possession of pseudoephedrine, yes, sir. But the 841A crime was charged, correct? Yes. She just wasn't just simply charged with the possession of pseudoephedrine? It was a conspiracy to possess pseudoephedrine with the knowledge that down the line it would become methamphetamine, yes, sir. Aiding and abetting the manufacturers of methamphetamine, is that right? That's what you're saying? Unless I'm misremembering the indictment, my understanding was it was aiding and abetting this conspiracy to possess pseudoephedrine, not aiding and abetting the down-the-road. Well, yes, I guess ultimately it can be read that it was aiding and abetting down the road, but I guess the point is that the indictment really, the allegations of the indictment, center around this possession of pseudoephedrine and that the long-term outcome was methamphetamine manufacturing. But the charge was simply conspiracy to aid and abet the manufacture of methamphetamine, right? And you can do that without even having any methamphetamine if you conspire to do something to manufacture an illegal drug, right? That's right. Right, sir. So it does make a difference whether they had the completed drug or not. That's correct, sir. That's correct. And so if the court's reading, the district court's reading of the conviction and the application of the guidelines in this context must refer to 2D1.1, then there is no purpose in having a listed chemical provision under 2D1.11. There's virtually no purpose in having it because in every instance someone is in possession of a listed chemical. There are a lot of times, aren't there, where the government can charge you with, when you commit a certain offense, you run afoul of Statute A and you run afoul of Statute B. The government can charge you with either one of them. And if you're convicted, see, it sounds a lot like your argument is really with the conviction, like how can she be convicted of aiding and abetting a methamphetamine manufacturer when all she really was doing was selling sodafenrin, and maybe to middlemen. I'm not sure she was selling directly to the manufacturers, at least from what I've read. But anyway, all she's really doing is selling out. How can she be charged with aiding and abetting a methamphetamine manufacturer? Well, she was. Right, but in the context of sentencing, I think what the court should have focused on, and obviously the court's correct in its analysis in terms of the conviction aspect, but in terms of the sentencing, I guess what the court should be looking at is what the substance of the conduct actually was. The fact that there was some knowledge of methamphetamine manufacturer, arguably some knowledge of methamphetamine manufacturer down the road, doesn't change that the core of the offense was an 841D, if I may refer to it just by the statute section, a possession of illicit chemical. In fact, the quantities of the illicit chemical that were addressed in the trial were what was used to try to show that it had to be methamphetamine manufacturer. But that's a different animal, isn't it? Sure, you're right. As a matter of fact, I can argue, and I think you can argue very persuasively, the mere fact that I'm selling large quantities of pseudoepidermis, obviously I know I'm not going to be charged in the first place unless I'm doing it for the wrong reasons. So obviously I know it's going to be used for the wrong reasons, and that mere fact alone could get me charged with that. It doesn't mean that I'm participating necessarily in a methamphetamine conspiracy, but that's what was charged here. And it seems to me that what you're attacking is that. She was charged with that. She was found guilty of that. And the guidelines, don't they say we enter the guideline book with the crime you were convicted of? And she was convicted of that crime, wasn't she? She was convicted of that crime. Again, I guess the purpose of the 841D is lost, if always. I understand the Court's position, obviously, but the purpose of 841D and the possession of illicit chemical with knowledge, I mean, that is the element of 841D, is possession of illicit chemical with knowledge that it would be used or reasonable cause to believe that it would be used down the road for methamphetamine manufacture. That's the core of that offense, and the guideline, therefore, encompasses this element of knowledge. And I guess my issue is really with the facts as they apply in sentencing in the sense that you can't – the elements of 841D encompass this knowledge that methamphetamine is going to be manufactured. And 841D, the guideline provision applicable to that is 2D1.11, the illicit chemical provision. If our position or the District Court's position is always, well, any time there's knowledge that down the road the drug is going to be used for methamphetamine manufacture, you cross-reference to drug manufacture, then there is no purpose in even charging that. Let's put it this way. If they had come in and the indictment filed was simply that she aided and abetted the – under Section 841, okay? That's all they charged. That's what they charged. They didn't charge anything about pseudo-evident. They simply said, aided and abetted the manufacture of methamphetamine. And that's what she's convicted of. Let's say that's what happened. Where should the Court go then when it gets to sentencing, in your view? I see where the Court's going. Obviously, in that context, the only provision the person would have been convicted of is 841A, and so the guidelines would reference 2D1.1. I understand. That's the problem. She was convicted under that. But the concern is that 841, then why – I guess it – You know, you're absolutely right. That's why I'm trying to phrase it. That's how they did it on the indictment. I suppose that's all they indicted her for. Right. There you are. The problem is that unless you attack the indictment or won your case in front of a jury on the basis that, well, she wasn't really involved in 841A, unless you won on that particular indictment, there she'd be. And the government could have charged her under the other, but didn't charge her under this one instead. See, that's what I'm trying to – And I think the danger there is that, then, the government can shop for its favorite guideline, and I suppose arguably the Court's correct that on some level our challenge is, in some sense, to the fact that the evidence of actual methamphetamine manufacturing, as noted in the briefs, the evidence of actual methamphetamine manufacturing was de minimis. There was none, effectively, in the sense that – and I understand the jury's findings, obviously. But the evidence was merely that based on the quantity, there was enough quantity of pseudoephedrine to have – to show that they were aware. And that one of the co-conspirators knew that the substance was distributed down the line also to – in order to manufacture methamphetamine. I believe there's something there. At some point she says something like, gee, maybe we should get into doing this ourselves directly. I think there's some evidence of that. Right, right. So, I mean, there's arguably evidence of the knowledge element, but certainly no evidence of that substantial step that the case law refers to about the manufacturing. And so, I mean, the Court's correct, I guess, that on some level the issue is the sufficiency of the evidence on that question of methamphetamine manufacturing. I understand. I recognize the jury's findings. The concern is that at sentencing, then, the government can shop with de minimis evidence, can shop for its favorite guideline, namely, it's always going to fall under 841A. And the purpose of the other provision, 2D1.11, is lost. Were you trial counsel? No, sir. Did trial counsel try to get the court to put a specific findings by the jury as to whether they found the defendant guilty on Part I or Part II or both under the conspiracy? No, sir. Not that I recall from the record. The only special verdict finding was as to the amount in order to trigger. This was pre-Booker findings. So they made a special finding as to the amount. Of course, if that had been requested and found out, then we'd know whether the jury would have found your client guilty under Part I or Part II or both. That's correct. It's unclear what the jury relied on and what the jury actually found, which part it was finding guilty. I mean, which part of the evidence it was relying on to find Ms. Herrera guilty of what. Prior counsel went to a lot of detail on the instructions but didn't say anything about that, which could have a vague effect on the sentence here, right? That's right, sir. And so because of the vagueness, I think it was incumbent on the court to clarify that at sentencing. Because of the vagueness in the findings, it was incumbent on the court. And the court really made no findings. It merely adopted the PSR and then took this case from a listed chemical case to a drug, to a controlled substance possession case. Well, the court didn't really take it. If the court just entered the guidelines with that conviction, that's where it goes. Well, it didn't actually – I understand, you're right, but that's actually not what the court did on the record. The court actually adopted the PSR, and the PSR did apply that cross-reference. And I think that's where Ms. Herrera's concern arises, is that, in fact, the PSR made findings that this was a possession of pseudothedrine case that involved the manufacturing of meth, and therefore the cross-reference should apply. And so this question of what involving the manufacturing of meth arises then, because that is what the court did, is adopt the PSR, and the PSR applied this cross-reference. So the court failed to explain how there were completed actions in this case sufficient to show that methamphetamine manufacturing occurred. I guess maybe the distinction is that under the guidelines, what's necessary to show – to link the methamphetamine and require – allow this cross-reference is actually not necessarily a greater level of proof, but the language is stronger in terms of what they want – what is necessary to involve – to apply the cross-reference, meaning – and I apologize, I'm wandering here. The guidelines – No, no, this is a very exciting discussion. I'm sorry, Your Honor. The guidelines – sorry. Don't you have any other issues? Yes. I can move on. The other concern that Ms. Herrera raised in this case is that the district court accepted wholesale the admission of a number of business records, or supposedly business records, without engaging in any of the proper findings necessary to determine if these documents were appropriate for the business record exception. Ms. Herrera's counsel below made a specific objection as to the reliability of these records. The lack of trustworthiness of the records is a determination that the district court is required to make under the business record exception. Some of the problems with the records is that your client had signed off on them and they were her orders, weren't they? That's correct. And we would argue that that in itself is a problem because part of the business record exception is to rule that – is to determine if the records were made by the business. And although a business can hold records from another individual that were created by another individual, the case law suggests in Arteaga, which we cited in our briefs, indicates that at the very least if the record is made by another, it has to be verified by an employee of the business in order to be admissible as a business record. And there was no evidence that – Don't we have authorities that say business records in the form of customers asking, send me $50 worth of X pills, that sort of thing. I thought we had things that say the business keeps those in the ordinary course of business. Those become business records. Obviously they're not prepared by the business, but they're received by the business and they ship on that. And that's a business record. You know what we're talking about? Well, she sends in a thing that she's actually signed, which looks a lot like an admission. But anyway, she sends in a thing that she's actually signed, taken. She sends it in at least to this business. The business gets it, puts it in its business records, ships out 50 kilos of X. And they dovetail. I'm not sure that the evidence was that clear as to – I mean, the government did show that some of the documents perhaps dovetailed. I'm not sure it was clear that the ones that she produced dovetailed with a shipment out. And I may be misremembering the record. It's not – it wasn't – I'm not sure the dovetailing was done explicitly on the record, I guess is my point. But also, in addition to that, the certification doesn't clarify that the business adopted those records. It merely shows that the business had those records in its files. The certification parrots the 8036 parameters for what a business record is, but it doesn't actually say this is how we use these records. Is there any doubt that those records that came from your client are authentic? Not on the record below, no, sir. There's no specific – Maybe it's an admission against interest. Perhaps as to the records that my client created, there still remains the concern, because obviously quantity is an issue both – was an issue on the merits and its sentencing. It still goes to the scope of how many of these documents actually were admissible and fell under the business record exception as opposed to admission against interest. So even if the court wants to take that the records from my client were admissions against interest, there was still a slew of records showing quantities of pseudofederant sales that were not adopted in the sense of shown – the certification at the very least should have explained how the business used these records rather than merely parroting 8036 and saying this is – these records were kept in regular conduct of business activity, et cetera, et cetera. There should be some actual application of how that was done in that business. And Ms. Herrera's objection below was quite explicit in saying this business was suspicious. This business is no longer in practice. This business was engaging in large quantities of pseudofederant distribution that were suspicious to the DEA themselves. And the court – the district court had an obligation at that point when realizing the undercurrent behind this pseudofederant distributor to inquire into the trustworthiness of the records. That is still a prong under 8036, and the district court failed to do that. Do you want to save some time? Yes, if I may, I reserve the balance of my time. Thank you, Your Honor. Good morning. May it please the Court, Tracy Wilkes on behalf of the United States. I was trial counsel. I indicted the case, and I was trial counsel. So I can tell the Court I just wanted to speak momentarily with respect to the sentencing issue to clarify two points of the record. One is that the Court is correct. The defendant was charged with conspiracy to do two objects. The first object was to aid and abet the manufacture of methamphetamine under 841A1. The second object was possessing pseudofederant, knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine under 841C2. There was a special verdict form that went to both objects. There was a special verdict form. It was actually pretty detailed as to both defendants. And it set out for the jury to make a specific finding as to each independent object. And I remember that specifically because the 841A1 object carries a 10-year mandatory minimum. So we necessarily had to specify that as a special verdict. And they found that object in particular. They found both objects. So on the sentencing issue, I would agree with the Court that she was found guilty of the 841A1 and the sentencing guideline 2D1.1 applies. When the jury made this finding on the objects, did it make a finding that the defendant was guilty on that one and two paragraphs? Yes. Both of them? It was set out separately so that there was, you know, with respect to Count 1, do you find him guilty of the first object being conspiracy to aid and abet the manufacture of methamphetamine, yes or no? And then under that was a question of the quantity that mirrored the mandatory minimum quantities in the statute. And then there was another question about the second object, the pseudoederant object. Okay. With respect to the business records issue raised by the defense, I would submit that the Court's admission of the business records at issue were neither plain error nor, for that matter, an abuse of discretion, because both Rules 803.6 and 902.11 were adhered to and because the evidence was cumulative to either clearly admissible or nonobjectual evidence. I believe that there was an assertion that we didn't have jurisdiction over that issue. Yes, Your Honor. I will submit on that issue unless this Court has any questions. Well, it looks to me like that may not be correct, and so I do have a question. The notice of appeal form, really none of the boxes are checked, except what looks to me like a statistical box that we always want to know is how long was the sentence, but no other box is checked, period. So is your position that no issues are properly before the Court or that all issues are properly before the Court, or are we picking shoes? My position is that based on that notice of appeal, only the sentencing issues were selected for appeal based on that, on the indication regarding sentencing. Well, the notice of appeal has a number of boxes. The first is I'm appealing my conviction only, not checked. I'm appealing my conviction and sentence, not checked. I'm appealing my sentence only, not checked. This is a 32C5 appeal, not checked. Interlocutory appeal, not checked. None of those bases for appeal are checked. The only thing that's checked is they say, it says, what was the sentence imposed, basically? And he says 360 months. So is it at least ambiguous? Since sentence only wasn't checked, but sentence imposed was. I think it certainly is ambiguous. I think that when looking at that notice of appeal and seeing that the sentencing is indicated and then combined with the fact that only the sentencing transcript was ordered at that time and then all the continuance requests after that were only based on the sentencing, I think a fair inference was that only the sentencing was meant to be appealed. But if it's ambiguous, schools out, right? If it's ambiguous, then we go ahead and say, well, you guys all briefed it, and that's the end of it. I think that's right, Your Honor. I mean, I think that's why the government moved to dismiss those allegations prior to filing their substantive response, because I think you're right. I think under Shin, once we filed our substantive response, there's an argument that there hasn't been any prejudice, although I was up late working on it, so I don't know if that counts as prejudice. Okay. I spoke to the business records, and I believe, like I said, that it was neither plain error nor an abuse of discretion, because I think that both Rules 803.6 and 902.11 were adhered to, and because, like I said, the evidence was cumulative to either properly admitted or not objected to evidence. With respect to the discovery motion, I would argue to the Court that this is not a Well, I mean, is that for us now? You're here on rebuttal, right? Two issues were raised. Fair enough, Your Honor. I will also clarify that the government does agree that an amylene remand is appropriate, and I don't think I need to speak further to that. If there are no other questions, then I will submit. Thank you.  Mr. Biddle. Just to address this issue of the notice of appeal, since the government did discuss it, I would only state that it's no different. The notice of appeal that was filed is no different than someone having filed a motion that they wrote themselves saying they're appealing from the judgment. If, in fact, we penalize an individual who uses the standard form because they don't check the proper boxes, then we're actually penalizing individuals who are using the proper form versus someone who files their own motion and says, I appeal from the judgment. I think the intent behind Rule 3 That's not going to happen. Okay. Thank you, Your Honor. And I would only very briefly address the issue of the discovery. Well, you can't do that now. Oh, I'm sorry. We're leaning the other way, Your Honor. I understand. Then I have no further argument. Thank you. Okay. Thank you. The matter will stand submitted. And next matter is United States versus Reader. Well, that's submitted. Okay. Well, I guess that's it. We're going to recess and reconstitute the panel at 1030. We'll be back at 1030.
judges: Pregerson, Fernandez, Siler